# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY EARL EVANS,<br><br>        Plaintiff,<br><br>   v.<br><br>JAMES TILTON, et al.,<br><br>        Defendants.<br>_____/ | CASE NO. 1:07-CV-01814-DLB PC<br><br>ORDER GRANTING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY (DOC. 93)<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN FULL (DOC. 60)<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT |

**Order**

## I.    Background

Plaintiff Johnny Earl Evans ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's complaint, filed December 13, 2007, against Defendants Ashraf Youssef and S. Zamora for deliberate indifference to a serious medical need in violation of the Eighth Amendment. Pending before the Court is Defendants' motion for summary judgment, filed January 25, 2010. (Defs.' Mot. Summ. J., Doc. 60.) Plaintiff filed his opposition to Defendants' motion for summary judgment on June 15, 2010.[1] (Pl.'s Opp'n, Doc. 82.) Defendants filed their reply on July 16, 2010. (Defs.' Reply, Doc. 89.) The matter is deemed submitted pursuant to Local Rule 230(l).

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed November 17, 2008. *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

1    On July 28, 2010, Plaintiff filed a response to Defendants' reply. (Doc. 92.) The Court construes this filing as a sur-reply. On July 30, 2010, Defendants filed a motion to strike Plaintiff's response. (Doc. 93.) Plaintiff filed his opposition to this motion on August 9, 2010. (Doc. 94.) Local Rule 230(l) does not generally permit the non-moving party to file a sur-reply. The Court did not request a sur-reply from Plaintiff. Accordingly, Defendants' motion to strike Plaintiff's response is granted.[2]

**II.    Summary Judgment Legal Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

---

[2] Out of an abundance of caution, the Court reviewed Plaintiff's response to Defendants' reply and finds that it would not change the analysis herein.
   Plaintiff also requested that the Court take judicial notice of Plaintiff's exhibits in support of his opposition. Defendants opposed Plaintiff's request. The Court may take judicial notice only of facts that are generally known within the territorial jurisdiction of the Court, or capable of accurate and ready determination by consulting sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201. Plaintiff's exhibits do not meet this criteria. Plaintiff's request for judicial notice of his exhibits is denied.

satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Motion for Summary Judgment, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which an inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-

3

1  45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

2      Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
3  show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as
4  a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine
5  issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

6  **III.    Undisputed Facts**[3]

7      At all times pertinent to his complaint, Plaintiff, Johnny Earl Evans (C-60537), was a
8  California State prisoner confined at Kern Valley State Prison (KVSP), Delano.  Defendant
9  Zamora was acting Health Care Manager at KVSP at all times relevant to the matters at issue in
10 this case.  Defendant Youssef was the Chief Medical Officer at KVSP at all times relevant to the
11 matters at issue in this case.

12     On February 3, 2006, Plaintiff partially tore his right Achilles tendon.  On February 7,
13 2006, Plaintiff was seen by Doctor Patel.  Doctor Patel referred Plaintiff to an orthopedic
14 specialist.  This referral was marked "urgent."  This referral was allegedly approved on February

---

[3] All facts are considered undisputed, unless otherwise noted. Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(e), all disputes with the movant's statement of facts must be supported with citation to evidence. *See* L. R. 260(b) (parties opposing Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial").  Plaintiff did not provide a list of statements which he disputes, but did provide his own list of undisputed facts.  The Court will consider only those facts and evidence that are relevant to resolving Defendants' motion for summary judgment.

9, 2006.[4] Defendant Youssef was not responsible for this approval.[5] After the February 7, 2006 visit with Doctor Patel[6], Plaintiff did not submit a request for medical treatment for his torn Achilles tendon. Plaintiff submitted an administrative grievance on April 13, 2006. This grievance was granted at the first level because he received an orthopedic consultation. Plaintiff was seen by a doctor for an unrelated ailment on April 27, 2006, and no complaints about his Achilles tear are noted.[7]

Plaintiff received an orthopedic consultation and treatment on May 26, 2006. Plaintiff was seen by a doctor for an unrelated ailment on June 15, 2006, and no complaints about his Achilles tear are noted. Plaintiff was seen by a doctor for an unrelated ailment on July 19, 2006, and no complaints about Plaintiff's Achilles tear are noted. On October 26, 2006, doctor Patel examined Plaintiff, and again made an urgent referral for a "follow-up" with the orthopedic

---

[4] Plaintiff contends that the referral was not approved on February 9, 2006. Plaintiff contends that he obtained a copy of the February 7, 2006 referral on February 22, 2007, by review of his central file. Plaintiff's copy of the referral was not signed or approved. (Pl.'s Ex. B, Doc. 86.) Plaintiff contends that Defendants' Exhibit C-1 is thus false. Defendants contend that Plaintiff authenticated Defendants' copy of the referral when he reviewed it during his deposition. (Defs.' Reply 4:3-17.) However, Plaintiff did not state that the document presented by Defendants was accurate, rather that Defendants' document indicated a date of February 9, 2006 as the date of approval, and that Plaintiff assumed this to be true. Defendants also contend that Plaintiff cannot create a triable issue of fact via affidavits that contradict his deposition. (*Id.*) Plaintiff does not merely create a triable issue of fact via affidavits that supposedly contradict his deposition testimony; Plaintiff also presents exhibits in support. Defendants do not provide any explanation for how Plaintiff obtained a different version of the February 7, 2006 referral.
  The Court does not have sufficient evidence to determine the veracity of Plaintiff's contention. However, there is a sufficient dispute for the Court to sustain Plaintiff's objection. The Court thus modifies Defendants' undisputed fact.

[5] Plaintiff contends that Defendant Youssef was responsible for approving an urgent CDC referral within 3 business days. Plaintiff cites to Operational Procedure 1008, Outpatient Specialty Services. (Pl.'s Ex. C, Doc. 86.) Review at the second level for urgent requests is to be completed by the Chief Medical Officer, Chief Physician and Surgeon, or a designee. (*Id.*) There is no evidence that Defendant Youssef directly participated in the medical request review process, as a designee could have reviewed it. Accordingly, Plaintiff's objection to Defendants' statement of undisputed fact is overruled.

[6] Defendants' statement of undisputed material facts listed Defendant Youssef as the doctor who saw Plaintiff on February 7, 2006. The Court presumes this is error. Plaintiff's deposition indicates that Plaintiff saw Doctor Patel on that date.

[7] Plaintiff denies that he did not make complaints to the unnamed doctor. Plaintiff presents no evidence to dispute Defendants' evidence that the doctors who examined Plaintiff on April 27, 2006, June 15, 2006, July 19, 2006, November 15, 2006, December 13, 2006, and January 1, 2007, made no note of any complaints regarding his Achilles tendon. Whether Plaintiff made any actual complaint does not dispute Defendants' fact that the reviewing doctors on those dates did not document any complaints about his Achilles tendon. Plaintiff's objections regarding these facts are all overruled.

5

specialist.[8]

Plaintiff claims that the Medical Board, headed by the Chief Medical Officer, Defendant Youssef, failed to approve the urgent referrals, causing a delay in Plaintiff's orthopedic consultation. "Follow-up" appointments do not require any review or approval besides that of the referring physician.

Plaintiff claims Defendant Zamora downgraded the urgent referral to a routine referral. Plaintiff's claim is based entirely on Zamora's statement in an administrative grievance:

> You were evaluated on October 26, 2006, by Dr. I. Patel at the second level of appeal. (1) Your right Achilles tendon was injured on January 3, 2006, you will be reevaluated for pain, numbness, flexibility and stiffness. (2) You were referred for service (RFS) stated urgent to Dr. Smith, an Orthopedic surgeon to reevaluate your right Achilles tendon. Your appeal is partially granted. Your medical condition is considered routine at this time.

Defendant Zamora is not a physician. Defendant Zamora did not change the priority level of Plaintiff's referral.[9] Defendant Zamora simply reviewed the physician's response to Plaintiff's grievance, to ensure that the grievance was answered completely. Defendant Zamora did not review or alter the content of the response.[10]

Plaintiff was seen by a doctor on November 15, 2006, and no complaints about his Achilles tear are noted. Plaintiff was seen by a doctor on December 13, 2006, and no complaints about his Achilles tear are noted. Plaintiff was seen by a doctor on January 1, 2007, and no

---

[8] Plaintiff contends that the referral was not a "follow-up" appointment. A review of Plaintiff's Exhibit K indicates that the October 26, 2006 medical referral was both an initial and follow-up request. Thus, Defendants' fact is undisputed, as the referral could be construed as a follow-up, and Plaintiff's objection is overruled.

[9] Plaintiff contends that Defendant Zamora did change the priority level of Plaintiff's referral from urgent to routine. However, Plaintiff has not produced evidence to demonstrate this, or contradict Defendants' evidence. Defendant Zamora treated the referral of service as "urgent" to orthopedic surgeon doctor Smith for reevaluation of Plaintiff's right Achilles tendon. (Defs.' Ex. C, Second Level Response, November 1, 2006.) The medical condition was treated as "routine." (*Id.*) Plaintiff's evidence indicates that doctor Patel referred Plaintiff for an orthopedic evaluation on October 26, 2006, and an Inmate Pre-Admission Form was submitted to Colonial Medical Group on November 2, 2006. (Pl.'s Ex. P.) Plaintiff presents no evidence to indicate that the referral was treated as anything other than urgent. Accordingly, Plaintiff's objection is overruled.

[10] Plaintiff contends that Defendant Zamora did change the content of the response via her response at the second level of review. As stated previously, Defendant Zamora referred to Plaintiff's medical condition as "routine," but the referral itself was treated as "urgent." There is no evidence that Defendant Zamora altered doctor Patel's labeling of the referral as urgent. Plaintiff's objection is overruled.

1 complaints about his Achilles tear are noted.  Plaintiff was seen by an orthopedic specialist, and
2 received treatment again on April 19, 2007. Plaintiff received pain medication during the period
3 he alleges this treatment was delayed.

4       Plaintiff claims that Defendant Youssef failed to provide medical treatment.  Defendant
5 Youssef was not Plaintiff's treating physician.[11]  Defendant Youssef had only "constructive
6 notice," of his medical complaints through the appeals process.[12]  Beside Plaintiff's
7 administrative grievance, he has no evidence that Defendant Youssef was actually aware that
8 Plaintiff was in need of treatment.

9 **IV.**    **Analysis**

10       **A.**    **Deliberate Indifference To A Serious Medical Need**

11       The Eighth Amendment prohibits cruel and unusual punishment.  "The Constitution does
12 not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and
13 citation omitted).  A prisoner's claim of inadequate medical care does not rise to the level of an
14 Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal
15 civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate
16 indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting
17 *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  The deliberate
18 indifference standard involves an objective and a subjective prong.  First, the alleged deprivation
19 must be, in objective terms, "sufficiently serious . . . ." *Id.* at 834 (citing *Wilson v. Seiter*, 501
20 U.S. 294, 298 (1991)).  Second, the prison official must "know[] of and disregard[] an excessive
21 risk to inmate health or safety . . . ." *Id.* at 837.

22       "Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060.  "Under

---

[11] Plaintiff contends Defendant Youssef had knowledge of Plaintiff's Achilles tendon injury and played a role in his treatment.  However, there is no evidence to support this.  Defendant Youssef's name appears on the Inmate Pre-Admission Form as the Chief Medical Officer.  This is not evidence that Defendant Youssef was directly involved in Plaintiff's treatment.  Plaintiff's objection is overruled.

[12] Plaintiff contends that Defendant Youssef had more than constructive notice.  Plaintiff attests in his deposition that Defendant Youssef should have known via the inmate grievance process and the urgent request forms of Plaintiff's Achilles tendon issues.  This however is at best constructive notice of Plaintiff's medical issues, and not evidence of actual knowledge.  Plaintiff's objection is overruled.

this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

### B. Defendant Zamora

Plaintiff's claims against Defendant Zamora concern her role in reviewing Plaintiff's inmate grievance on November 2, 2006. Plaintiff contends that Defendant Zamora's response of " [Plaintiff's] medical condition is considered routine at this time" altered Doctor Patel's urgent referral and delayed Plaintiff receiving treatment for his Achilles tendon. However, there is no evidence that Plaintiff's referral was treated as routine. Defendant Zamora's response at the second level of review indicated that the referral remained urgent, even though the medical condition was routine. Plaintiff's Exhibit P indicates that an Inmate Pre-Admission Form was submitted on November 2, 2006 to the Colonial Medical Group, regarding Doctor Patel's October 26, 2006 urgent medical referral request. Submitting the medical referral request to an outside specialist within a week of making the referral indicates that the referral was treated as urgent, and not routine.

There is no evidence that Defendant Zamora's actions in reviewing Plaintiff's grievance were deliberately indifferent, as there is no evidence that Defendant Zamora disregarded an excessive risk to Plaintiff's health. Though Plaintiff was not seen by an orthopedic specialist until April 19, 2007, this is not evidence that Defendant Zamora's actions constituted disregard of an excessive risk to Plaintiff's health. It is highly speculative at best that Defendant Zamora caused a delay in treatment even though she treated the referral as urgent. Construing the facts in light most favorable to the non-moving party, there is no triable issue of material fact as to Plaintiff's Eighth Amendment claim against Defendant Zamora.

///

///

### C. Defendant Youssef

Plaintiff's claim against Defendant Youssef is based on Defendant Youssef's alleged failure to approve the February 7, 2006 urgent medical referral in a timely manner, as well as failing to provide any treatment for Plaintiff's injuries. Defendants contend that Defendant Youssef had no role in Plaintiff's medical treatment.

Plaintiff contends that he is entitled to the presumption that Defendant Youssef was aware of Plaintiff's Achilles tendon issues because of the medical referrals and inmate grievances that Plaintiff filed, citing to *Jett v. Penner*, 439 F.3d 1091, 1097 (9th Cir. 2006). *Id.* (finding that inmate plaintiff as opposing party to motion for summary judgment was entitled to inference that his primary care doctor was aware of filed grievances, medical slips, and letter addressed to the doctor regarding the plaintiff's medical treatment). Unlike the situation in *Jett*, there is no evidence that Defendant Youssef was directly involved in treating Plaintiff's medical issues. Thus, Plaintiff is not entitled to an inference that Defendant Youssef was aware of any filed grievances or medical referrals.

Plaintiff also contends that Defendant Youssef was required under Operational Procedure 1008 to approve of urgent referrals within three business days, but failed to do so. Plaintiff contends that he did not receive any medical treatment for his Achilles tendon injury until May 26, 2006.

There is some dispute as to when the February 7, 2006 urgent referral was approved. Defendants contend it was approved February 9, 2006, while Plaintiff contends that this is not the case. Regardless, there is no evidence that Defendant Youssef was responsible for the approval. Operational Procedure 1008 allows the Chief Medical Officer or a designee to approve an urgent medical request. Defendants' copy of the February 7, 2006 medical request is unclear as to who was responsible for the approval. However, there is no evidence to support a finding that Defendant Youssef was responsible. Supervisory defendants are not liable under a respondeat superior theory of liability. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).

There is no triable issue of material fact as to Plaintiff's claims against Defendant Youssef. Accordingly, the Court will grant summary judgment in favor of Defendant Youssef.

9

**V.      Conclusion And Order**

Based on the foregoing, it is HEREBY ORDERED that:

1. Defendants' motion to strike Plaintiff's response to Defendants' reply, filed July 30, 2010, is GRANTED;

2. Defendants' motion for summary judgment, filed January 25, 2010, is GRANTED;

3. Summary judgment is GRANTED in favor of Defendants Zamora and Youssef and against Plaintiff for Plaintiff's Eighth Amendment claim; and

4. The Clerk of Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

Dated:   **September 16, 2010**                    /s/ **Dennis L. Beck**
                                                                UNITED STATES MAGISTRATE JUDGE